UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEVI SALYER, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL, *et al.*, <br><br> Defendants. | CAUSE NO. 3:23-CV-1004-PPS-JEM |

## **OPINION AND ORDER**

Levi Salyer, a prisoner without a lawyer, filed a complaint. [DE 1]. Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, I must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Salyer alleges officials at the Westville Correctional Facility held him in disciplinary segregation in excess of thirty days past the date he was supposed to be transferred back into the general population after a disciplinary sanction. Approximately six days before his sanction ended, Case Manager K. Dougherty

approached his cell with a form for Salyer to sign which "illustrated his status change from disciplinary segregation to idle/general population and pending transfer to either Indiana State Prison or Wabash Valley Correctional." [DE 1 at 2]. Salyer claims Case Manager Dougherty "carelessly" failed to file the form in a timely manner, even though he knew prisoners were routinely being held three to four months past their reclassification date. [*Id.*] Once it was submitted—Salyer doesn't say when—Defendant Mrs. Doe failed to fax it to Defendant Mr. Doe "to be approved or denied." [*Id.*] Salyer claims all of the defendants have knowledge that prisoners are being held several months past their disciplinary segregation reclassification date and have failed to prevent them from being "unreasonably held and without probable cause on disciplinary segregation." [*Id.* at 3]. Of note, Salyer signed and dated his complaint on the same date he was allegedly supposed to be reclassified.

Salyer describes the conditions in segregation as "significantly more restrictive th[a]n general population" because his cell door only has a small window, he's not allowed to shower or "partake in out of cell recreation" on Tuesdays or Thursdays, he's limited to five hours of recreation a week, he has "barely any opportunities for direct and normal social contact with other persons," he's shackled when he's moved outside of his cell, he has to eat in his cell, he doesn't have "free visitation" from friends or family members, he can't participate in group religious services, he's not permitted to check out books from the law library and only has limited access to legal materials, he isn't allowed to "possess any of his personally paid for hard back books," and he can't order over-the-counter medication from commissary. [DE 1 at 3-4]. He has sued

2

Commissioner Robert Carter, Warden Ron Neal, Classification Supervisor Jane Doe, Director of Classification John Doe, and Case Manager K. Dougherty for violating the Eighth and Fourteenth Amendments. He seeks monetary damages and to be transferred/reclassified back to the general population.

I'll begin with Salyer's due process claims. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the

3

analysis, even when conditions are significantly harsher. *See e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & nn.2–3 (7th Cir. 2009) (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

    Here, Salyer doesn't take issue with his original sanction resulting in disciplinary segregation—or the disciplinary process that presumably led up to it. Rather, he alleges the officials were either "careless[]" or indifferent to his reclassification date, so his claims are akin to those in which prisoners object to their placement in discretionary or administrative segregation. The problem for Salyer then, is that he must show both the length in segregation *and* the conditions violated the Constitution, and his complaint doesn't plausibly allege either. With regard to length, Salyer has suggested his placement extended thirty-days beyond what should have been his reclassification date, but, curiously, his complaint was signed and dated the same day he was supposed to be

4

reclassified. In any event, Salyer states only that he was subjected to an "excess" of thirty extra days. This allegation is impermissibly vague, and, more importantly, thirty days isn't generally long enough to trigger due process concerns. *See Marion*, 559 F.3d at 697-98 & nn.2–3; *see also Williams*, 849 Fed. Appx. at 157 (noting that thirty days in segregation was "a duration so brief that it foreclosed any implicated liberty interest").

Additionally, although the conditions Salyer describes are harsher than those associated with ordinary prison life, they aren't unduly or atypically so. "Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (collecting cases and finding conditions where plaintiff was "allowed limited possessions, dressed in a 'suicide-proof gown,' served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff" didn't trigger due process concerns); *see also Hernandez v. Hanks*, 65 Fed. Appx. 72, 74 (7th Cir. 2003) (affirming dismissal of complaint where inmate alleged defendants had "improperly changed his segregation release date on the paperwork for two conduct violations"—which resulted in nine extra years of disciplinary segregation—because he did not demonstrate "a liberty interest in returning to the general prison population after completing his segregation sanction"). Accordingly, Salyer has not stated any plausible due process claims regarding his overstay in segregation.

Even if an inmate's placement itself does not trigger any due process concerns, he may still have a claim regarding the conditions of his confinement under the Eighth

5

Amendment.[1] "Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotation marks and citation omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). They must also be provided with "'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

---

[1] *See Townsend*, 522 F.3d at 772-73 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

As described above, Salyer alleges he isn't allowed to shower on Tuesdays or Thursdays, he's restricted to five hours of recreation time per week, he's isolated with "barely any" social contact or "free" family visitation, he must eat meals alone in his cell, he's shackled when he's moved around, he can't participate in group religious services, he has limited access to the law library and hard cover books, and he can't order medication from commissary. Although he states this situation caused him emotional harm, he doesn't allege he suffered any specific injuries during his stay in segregation or that his physical health was affected.

Of note, Salyer doesn't plausibly allege that any of the defendants knew about the specific conditions or Salyer's dissatisfaction with them. He simply claims the collective defendants "repeatedly subjected" him to conditions that "den[ied] him the minimal measures of life's necessities." [DE 1 at 4]. This is insufficient to state a claim against the individual defendants. *See e.g., Rasho*, 22 F.4th at 710 (officials "must have actually known of and consciously disregarded a substantial risk of harm" in order to be deliberately indifferent); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content).

Moreover, even if Salyer had alleged the defendants were aware of his situation, the description he provides does not plausibly demonstrate the conditions were sufficiently serious to deny him life's necessities. *See generally Giles v. Godinez*, 914 F.3d 1040, 1051–52 (7th Cir. 2019) (finding "harsh" conditions in segregation unit including "vermin infestations, filthiness, and lengthy periods of isolation" did not establish

7

inmate was "deprived of the minimal civilized measure of life's necessities, even considering the effects on his mental condition"); *see also Conner v. Hoem*, 768 Fed. Appx. 560, 563–64 (7th Cir. 2019) (citing *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012)) ("restricting inmates to weekly showers does not violate the Eighth Amendment"); *Smith v. Erickson*, 684 Fed. Appx. 576, 578–79 (7th Cir. 2017) (collecting cases and recognizing the distinction between the denial of "recreation," which did not state a plausible constitutional violation, versus the denial of exercise in its entirely, which could); *Stojanovic v. Humphreys*, 309 Fed. Appx. 48, 52 (7th Cir. 2009) (finding conditions where visitation was restricted did not deny inmates of "the minimal civilized measure of life's necessities"); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) ("mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights"); *Renee v. Neal*, 2018 WL 4468968, at *2 (N.D. Ind. Sept. 17, 2018) (complaint did not plausibly allege denial of access to commissary items violated the Eighth Amendment). Therefore, Salyer has not stated any plausible Eighth Amendment claims either.

     I find that this complaint does not state any claims for which relief can be granted. If Salyer believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available

8

from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

**ACCORDINGLY**:

Levi Salyer is **GRANTED** until **May 8, 2025**, to file an amended complaint and **CAUTIONED** that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

**SO ORDERED**.

ENTERED: April 14, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT